IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>v.<br><br>**ALLAN KENTRELL HILL,**<br><br>**Defendant.** | Case No. 24-CR-073-JFH |

## OPINION AND ORDER

Before the Court are two (2) notices filed by the United States of America ("Government"): (1) a Notice to Introduce Evidence Under Federal Rules of Evidence 404 and 405 ("404 & 405 Notice") [Dkt. No. 26]; and (2) an Amended Notice of Intent to Introduce Evidence Under Federal Rules of Evidence 803(b) and 902(11) ("803 & 902 Notice") [Dkt. No. 77]. Defendant Allan Kentrell Hill ("Defendant") did not file objections to the notices or otherwise respond. Also before the Court are the Government's Motion to Introduce Evidence of Inconsistent Alibis During Case-in-Chief ("Motion on Inconsistent Alibis") [Dkt. No. 59] and Omnibus Motion in Limine ("Motion in Limine") [Dkt. No. 79]. Defendant also did not file responses to the motions. Nevertheless, the Court will consider the admissibility of the evidence described in the Government's notices and evaluate the Government's motions below.

## BACKGROUND

### I. Charged Conduct

On May 15, 2024, Defendant was charged by a three-count indictment. Dkt. No. 13. Specifically, the indictment alleged that on September 7, 2023, Defendant unlawfully killed the victim with a firearm. *Id*. A second superseding indictment was filed in this case on May 14, 2025 charging Defendant with seven (7) total counts: (1) Murder in Indian Country, in violation of 18

U.S.C. §§ 1111(a), 1151, 1153, and 2; (2) Murder in Perpetration of Robbery in Indian Country, in violation of 18 U.S.C. §§ 1111(a), 1151, 1153, and 2; (3) Use, Carry, Brandish, and Discharge of a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. 924(c)(1)(A)(i), (ii), (iii), and 2; (4) Causing the Death of Another Person in the Course of a Violation of Title 18 U.S.C. § 924(c), in violation of 18 U.S.C. § 924(j) and 2; (5) Robbery in Indian Country, in violation of 18 U.S.C. §§ 2111, 1151, 1153, and 2; (6) Use, Carry Brandish of a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii), and 2; and (7) Tampering with a Witness, in violation of 18 U.S.C. § 1512(b)(2)(B). Dkt. No. 67. Specifically, the second superseding indictment alleges that on September 7, 2023, Defendant willfully, deliberately, maliciously, and with premeditation and malice aforethought killed Victim 1 with a firearm while in the perpetration of a robbery. *Id*. It further alleges that on August 17, 2023, Defendant, with a firearm and by force, violence, and intimidation, took something of value from Victim 2. *Id*. Finally, it alleges that on September 9, 2023, Defendant engaged in misleading conduct with the intent to cause another to alter information for the purpose of interfering with the integrity and availability of that information for trial. *Id*.

**A.      September 7, 2023 Murder**

On or about September 7, 2023, Victim 1 was shot three (3) times in the chest and three (3) times in the back of the head. Dkt. No. 26 at 1.[1] Near Victim 1, law enforcement located approximately eighteen (18) cartridge cases: ten (10) identified as being fired from a Beretta APX model 9mm Luger semi-automatic pistol with laser light, bearing serial number AOO7178X

---

[1] For purposes of ruling on the notices and motions only, the Court accepts the Government's recitations of the facts.

("Beretta"), and eight (8) identified as being fired from a Kel-Tec Sub-2000 model 9mm Luger rifle with foregrip light, serial number FGMH22 ("Kel-Tec"). *Id*. at 1-2. Additionally, a cartridge case, likely fired by a Glock [Gen 1-4] pistol ("Glock"), was located several yards from Victim 1's body and a Glock magazine containing 9mm bullets was found in Victim 1's right sock. *Id*. at 2. However, law enforcement was unable to locate the Glock—which Victim 1 was known to carry—or Victim 1's cell phone. *Id*.

Investigators further determined that, just prior to the murder, Victim 1 left his grandmother's residence on September 7, 2023 between 12:30 and 1:00 a.m. with Defendant in the Defendant's Jeep. *Id*. at 2. Surveillance video from a Casey's gas station located at 702 S. 32nd, Muskogee, Oklahoma showed Defendant's Jeep at the Casey's between 1:48 and 2:03 a.m. Dkt. No. 26 at 2. During that time, Victim 1 exited the backseat of Defendant's Jeep and entered the Casey's on two (2) occasions. *Id*. Defendant exited the driver's seat and pumped gas in the vehicle. *Id*. A witness stated that a third individual was in the front passenger seat of the vehicle. *Id*. This third individual was later identified by law enforcement as Tereance Renfro ("Renfro"), a known associate of Defendant. Dkt. No. 26 at 2.

**B.    August 17, 2023 Robbery**

Three (3) weeks before the September 7, 2023 murder, Defendant was allegedly involved in robbery which led to his possession of the Kel-Tec firearm. On August 17, 2023, Victim 2 arranged to meet Defendant at a Casey's gas station located on East Shawnee in Muskogee, Oklahoma to sell Defendant a Kel-Tec firearm. Dkt. No. 26 at 4. After arriving at the Casey's, Defendant told Victim 2 that he was going inside the Casey's to get money for the purchase. *Id*. When Defendant returned, Victim 2 opened the trunk of his vehicle to show Defendant the Kel-Tec firearm. *Id*. At that time, an unknown Black male wearing a black ski mask, gray hooded

3

sweatshirt, and black sweatpants approached Victim 2 from the north side of the Casey's, put a firearm to Victim 2's back, and instructed Victim 2 to hand him the Kel-Tec firearm and Victim 2's cell phone. Dkt. No. 26 at 4. Investigators determined that the physical description of the unknown Black male matched Renfro's physical description. *Id*. Victim 2 did as he was instructed and handed the Kel-Tec and his cell phone to the unknown Black male. *Id*. Defendant and the unknown Black male then fled with the items around the Casey's and Defendant shouted to Victim 2, "pleasure doing business with ya." *Id*.

## II.     Other Conduct

### A.     September 20, 2023 Seizure of Weapons

On September 20, 2023, Renfro was found in possession of the Beretta and Kel-Tec firearms following his arrest on an unrelated matter. Dkt. No. 26 at 5. In a subsequent interview with law enforcement, Renfro admitted that the firearms belonged to him. *Id*. Renfro stated that he had owned the Beretta for some time and always carried it with him. *Id*. Regarding the Kel-Tec, Renfro stated that Defendant had given it to him after the August 17, 2023 robbery because Defendant was "trying to get rid of it." *Id*. Renfro further admitted that he was with Defendant on the nights of the August 17, 2023 robbery and the September 7, 2023 murder. Dkt. No. 26 at 5. Renfro claimed, however, that he did not know exactly what happened those nights because he stayed in Defendant's vehicle during the August 17, 2023 robbery and had fallen asleep during the September 7, 2023 murder. *Id*. Renfro commented that he believed both the Beretta and Kel-Tec firearms were used in the September 7, 2023 murder because upon waking from his nap, he noticed the firearms were in different places in Defendant's vehicle than they were originally located. *Id*. Finally, Renfro stated that it was his belief that Defendant had intended to rob the victim of a

Glock-style firearm on the night of the September 7, 2023 murder because Defendant was "mad at the victim for messing around with his girlfriend." *Id*.

### B. Alibis

Defendant was originally charged in connection with the September 7, 2023 murder in state court. During the course of the state court case, Defendant's then counsel, T.H., represented to Federal Bureau of Investigation Special Agent Mike Miller ("Agent Miller") that Defendant was working the overnight shift at his job at the Custom Distribution Services facility in Muskogee at the time of the murder. Dkt. No. 59 at 2. Subsequent investigation determined that this alibi was false and that Defendant had attempted to fabricate documentation to support the false alibi. *Id*. Presumably, this conduct forms the basis for Count Seven of the superseding indictment, Tampering with a Witness. *See* Dkt. No. 67.

Defendant has also submitted notice of an alibi in this case. Dkt. No. 62. Defendant's present alibi claims that he was in his car on his way to his grandmother's house at the time of the alleged offense. *Id*. at 1. For this reason, the Government seeks to introduce evidence of Defendant's inconsistent alibis in its case-in-chief pursuant to Fed. R. Evid. 801(d)(2).

### C. Renfro's Conviction

In October 2024, Renfro, a non-Indian, was convicted in Oklahoma state court of First Degree Murder. Dkt. No. 79 at 2. Renfro's conviction was in connection with the September 7, 2023 murder that Defendant is charged with in this case. *Id*.

## AUTHORITY AND ANALYSIS

### I. The Government's 404 & 405 Notice [Dkt. No. 26]

The Government's 404 & 405 Notice indicates that the Government seeks to introduce evidence of Defendant's involvement in the August 17, 2023 robbery of the Kel-Tec firearm and

evidence surrounding the September 20, 2023 seizure of the Beretta and Kel-Tec firearms as intrinsic evidence or, in the alternative, as evidence under Fed. R. Evid. 404(b) and 405. Dkt. No. 26 at 5-7. However, subsequent to the filing of the 404 & 405 Notice, the second superseding indictment was filed and the August 17, 2023 robbery now forms the basis of Counts Five and Six. Dkt. No. 67. For this reason, the issue of the admissibility of Defendant's conduct as it relates to the August 17, 2023 robbery is now moot. The Court will analyze the admissibility of the September 20, 2023 seizure below.

### A.     Rule 404(b)

The Tenth Circuit has explained, "[w]hen we apply Rule 404(b), we distinguish between evidence that is extrinsic or intrinsic to the charged crime." *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015) (citing *United States v. Pace*, 981 F.2d 1123, 1135 (10th Cir. 1992), *abrogated on other grounds as recognized in United States v. Bell*, 154 F.3d 1205, 1209-10 (10th Cir. 1998)). "Evidence of other acts may be inadmissible under Federal Rule of Evidence 404(b), but this rule does not cover evidence that is considered 'intrinsic.'" *Id.* (citing *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011)). Evidence is considered "intrinsic" when it is "directly connected to the factual circumstances of the crime and provides contextual or background information to the jury" and "extrinsic" when it "is extraneous and is not connected or blended with the factual circumstances of the charged offense." *Id.* (quoting *United States v. Parker,* 553 F.3d 1309, 1314 (10th Cir. 2009)). The Tenth Circuit considers evidence intrinsic when it is inextricably intertwined with the charged conduct or the evidence is entirely germane background information, directly connected to the factual circumstances of the crime. *Id.* (internal citations and quotations omitted).

The Government argues that evidence of the September 20, 2023 seizure is necessary to fully set forth the ballistic evidence in this case. Dkt. No. 26 at 6. Specifically, this evidence shows how law enforcement came into the possession of the firearms and also provides a link between Defendant and the firearms, as it is alleged that Defendant and Renfro were together at the time of the September 7, 2023 murder. *Id*. at 6-7. For these reasons, the Government argues that this evidence is both connected to the factual circumstances of the charged offenses and provides necessary background information to the jury. *Id*.

The Court agrees. The seizure of the firearms occurred close in time to the September 7, 2023 murder and provides another link between Defendant and the alleged murder weapons. Specifically, it is alleged that Defendant and Renfro were together at the time of the September 7, 2023 murder and then, just a few weeks later, Renfro was found in possession of the murder weapons. The Court further agrees that this evidence is necessary to establish a chain of custody for the firearms and to fully explain the ballistic evidence in this case.

In balancing this evidence under Rule 403, the Court finds that its probative value is not substantially outweighed by any prejudicial effect. Fed. R. Evid. 403. While this evidence could potentially be prejudicial—for example, it shows that Defendant was associated with someone who was arrested and found to be in possession of the alleged murder weapons—it is not unfairly so. "Evidence is not unfairly prejudicial simply because it is damaging to [a party's] case." *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (quotation omitted). Rather, it must have "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* (quoting Fed. R. Evid. 403 advisory committee's note). In considering the underlying charges and the circumstances of the September 20, 2023 seizure, the Court finds that this evidence does not have an undue tendency to suggest a decision on an improper basis. For

these reasons, the Court finds that evidence of the September 20, 2023 seizure is admissible as intrinsic evidence.[2]

### B. Rule 405

The Government's 404 & 405 Notice also states that it seeks to introduce evidence under Rule 405. However, this issue is not yet ripe for the Court's decision. Should character become an issue at trial, the Government should notify the Court outside the presence of the jury so that the Court may properly evaluate the admissibility of any such evidence. In the meantime, the Court reserves any ruling under Rule 405 for trial.

For the reasons stated above, the Court finds that the evidence described in the 404 & 405 Notice [Dkt. No. 26] is MOOT IN PART AND ADMISSIBLE IN PART as outlined above.

## II. The Government's Amended 803(6) and 902(11) Notice [Dkt. No. 77]

The Government seeks to introduce evidence of Defendant's and Renfro's cell phone records to establish Defendant's and Renfro's locations at the time of the charged conduct. Dkt. No. 77 at 2. Additionally, the Government seeks to introduce and/or use a summary of the cell phone records and an explanation of cellular location data as a demonstrative exhibit. *Id*. The Government may also potentially introduce "Meta (Facebook) records associated with [Defendant]." *Id*.

Rule 902(11) of the Federal Rules of Evidence states that a document can be self-authenticating if it "meets the requirements of Rule 803(6)(A)-(C), as shown by the certification of the custodian or another qualified person." Fed. R. Evid. 902(11). Rule 803 provides certain

---

[2] In its 404 & 405 Notice, the Government references several statements made by Renfro at the time of the September 20, 2023 seizure. While the Government does not indicate that it intends to introduce these statements at trial, the Court notes that the admissibility of these statements is subject to the rule against hearsay.

exceptions to the rule against hearsay. *See* Fed. R. Evid. 802-803. One such exception, the business records exception, "provides that certain records of regularly conducted business activity are admissible for their truth even though they contain hearsay." *United States v. Blechman*, 657 F.3d 1052, 1065 (10th Cir. 2011) (citing Fed. R. Evid. 803(6)). To satisfy the business records exception, a record

> must (1) have been prepared in the normal course of business; (2) have been made at or near the time of the events recorded; (3) be based on the personal knowledge of the entrant or of a person who had a business duty to transmit the information to the entrant; and (4) indicate the sources, methods and circumstances by which the record was made were trustworthy.

*Id*. (quoting *United States v. Ary*, 518 F.3d 775, 786 (10th Cir. 2008)). "The proponent of the document must . . . lay this foundation for its admission." *United States v. Yeley-Davis*, 632 F.3d 673, 678 (10th Cir. 2011) (quoting *United States v. Ary,* 518 F.3d 775, 786 (10th Cir. 2008)).

The Government's 803 & 902 Notice does not lay any foundation for the admission of the cell phone or Facebook records. Therefore, the Court will defer its ruling on the admissibility of this evidence to trial at which time the Government will be required to lay a proper foundation.

**III.   The Government's Motion on Inconsistent Alibis [Dkt. No. 59]**

The Government seeks to introduce evidence in its case-in-chief of Defendant's inconsistent alibis pursuant to Fed. R. Evid. 801(d)(2)(C, D). Dkt. No. 59 at 1, 3. Specifically, the Government intends to introduce a text message sent on December 8, 2023, by T.H., Defendant's counsel in the state court matter, to Agent Miller conveying an alibi for Defendant on the night of the September 7, 2023 murder. *Id*. at 1. The text message stated that Defendant "worked overnight until morning at the Custom Distribution Services facility in Muskogee on 9/7. [T.B.] was the supervisor. There are other employees who saw [Defendant] there." *Id*. at 1-2. The Government contrasts this with Defendant's current alibi that he was "in his car on his way to

9

his grandmother's home at the time of the alleged offense, which occurred on 09/07/2023 at approximately 3-4 a.m." Dkt. No. 56.

A statement is not considered "hearsay" if it is offered against a party and is the party's own statement. Fed. R. Evid. 801(d)(2)(A). Additionally, a statement falls outside the scope of hearsay where it "was made by a person whom the party authorized to make a statement on the subject" or "was made by the party's agent [ ] on a matter within the scope of that relationship and while it existed." *Id*. at 801(d)(2)(C, D). Under Rule 801(d)(2), "[s]tatements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney." *Fester v. Farmer Bros. Co.*, 49 F. App'x 785, 797 (10th Cir. 2002) (unpublished) [3] (quoting *United States v. Margiotta*, 662 F.2d 131, 142–43 (2d Cir. 1981)); also citing *Purgess v. Sharrock*, 33 F.3d 134, 143–44 (2d Cir.1994) (holding that statement made by defense counsel was admissible under Rule 801(d)(2)); *United States v. Sanders*, 979 F.2d 87, 92 (7th Cir.1992) (same); *Hanson v. Waller*, 888 F.2d 806, 814 (11th Cir.1989) (same).

Here, the text message sent by T.H. was clearly sent in his capacity as Defendant's attorney and was sent to communicate information regarding Defendant's defense. Therefore, in sending the text message, T.H. was acting as Defendant's agent on a matter within the scope of his role as Defendant's attorney. The Court is convinced that the statement regarding Defendant's prior alibi is admissible as an opposing party statement under Fed. R. Evid. 801(d)(2). For these reasons, the Government's Motion on Inconsistent Alibis [Dkt. No. 59] is GRANTED.

---

[3] "Unpublished opinions are not precedential, but may be cited for their persuasive value." 10th Cir. R. 32.1(A), 28 U.S.C.; *see also United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

## IV.     The Government's Motion in Limine [Dkt. No. 79]

"The purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to the issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Management Co.*, 587 F.Supp.2d 1201, 1208 (D. Kan. 2008) aff'd, 402 Fed. App'x 337 (10th Cir. 2010) (quotation and citation omitted). In many instances, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in the proper context. *Id*. A court will generally not grant a motion in limine unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible on all potential grounds." *Tulsa Zoo Mgmt., Inc. v. Peckham Guyton Albers & Viets, Inc*., No. 17-CV-644, 2019 WL 1562147, at *1 (N.D. Okla. Mar. 5, 2019) (citation and quotation omitted).

### A.     Evidence and Statements on Renfro's Conviction

In October 2024, Renfro was convicted in state court for the murder of Victim 1 in the present matter. Dkt. No. 79 at 2. Renfro was prosecuted in state court due to his non-Indian status. *Id*. The Government asks the Court to preclude any evidence or statements from the defense regarding Renfro's conviction as it relates to Defendant's guilt or innocence. *Id*.

Evidence that a coconspirator has been charged or convicted of conspiring with a criminal defendant is generally inadmissible "as substantive evidence of a defendant's guilt." *United States v. Nickl*, 427 F.3d 1286, 1294 n.2 (10th Cir. 2005). Likewise, a coconspirator's guilty plea is not admissible as substantive evidence of a defendant's guilt. *United States v. Whitney,* 229 F.3d 1296, 1304 (10th Cir. 2000).

It follows that the inverse should also be true: evidence that a coconspirator or accomplice has been charged or convicted is inadmissible as substantive evidence of a defendant's *innocence*.

11

Therefore, the Court finds that evidence of Renfro's conviction in the state court matter is inadmissible at trial as substantive evidence as to both Defendant's guilt and innocence.[4]

### B.  Defense Statements on Government Witnesses

Finally, the Government asks the Court to preclude Defendant from commenting on the Government's failure to call certain witnesses at trial.  Dkt. No. 79 at 3.  Typically, a party may comment on the other party's failure to call a witness if the witness was peculiarly available to the other side.  *United States v. Hoenscheidt*, 7 F.3d 1528, 1531 (10th Cir. 1993) (citing *United States v. Carroll*, 871 F.2d 689, 692 (7th Cir.1989); *United States v. Keplinger*, 776 F.2d 678, 702–03 (7th Cir.1985), cert. denied, 476 U.S. 1183, 106 S. Ct. 2919, 91 L.Ed.2d 548 (1986)).  A witness may be peculiarly available to the other side if the other side alone has physical control over the witness or if the witness would be hostile to or biased against the calling party.  *Id*.  The Government argues that the witnesses in this case are equally available to both sides.  Dkt. No. 79 at 4.  Absent any response from Defendant contradicting the Government's assertion, the Court finds that the witnesses in this case are equally available to both parties and, therefore, Defendant is precluded from commenting on the Government's failure to call certain witnesses at trial.[5]

For the foregoing reasons, the Government's Motion in Limine [Dkt. No. 79] is GRANTED.

---

[4]  The Government correctly notes that should Renfro testify at trial, evidence of his conviction could be used for impeachment purposes.  Should this occur, the Court will instruct the jury accordingly.  *See* Tenth Cir. Pattern Instr. 1.19 ("The fact that another person also may be guilty is no defense to a criminal charge.").

[5]  *See* LCrR 1.2 and LCvR7.1(d), finding that a motion is deemed confessed where no response has been filed.

## CONCLUSION

IT IS THEREFORE ORDERED that:

- The evidence set forth in the Government's 404 & 405 Notice [Dkt. No. 26] is MOOT IN PART AND ADMISSIBLE IN PART as set forth in this Order;

- The Court reserves its ruling on the admissibility of the evidence set forth in the Government's 803 & 902 Notice [Dkt. No. 77];

- The Government's Motion to Introduce Evidence of Inconsistent Alibis During Case-in-Chief [Dkt. No. 59] is GRANTED; and

- The Government's Omnibus Motion in Limine [Dkt. No. 79] is GRANTED.

Dated this 4th day of August 2025.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE