**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 24-CR-073-JFH** |
| **ALLAN KENTRELL HILL,** | |
| **Defendant.** | |

**OPINION AND ORDER**

Before the Court are the Trial Brief filed by Defendant Allan Kentrell Hill ("Defendant") [Dkt. No. 101] and the Response to Defendant's Trial Brief filed by Plaintiff the United States of America (the "Government") [Dkt. No. 104]. For the reasons set forth below, the request made by Defendant in his Trial Brief, to exclude testimony by the Government's expert FBI Special Agent Joseph Keyes is denied.

**BACKGROUND**

**I.      The September 7, 2023 Murder**

Defendant is charged by indictment with seven offenses, including a murder that is alleged to have occurred on September 7, 2023. Dkt. No. 67. According to the Government, on or about September 7, 2023, Victim 1 was shot three times in the chest and three times in the back of the head. Dkt. No. 26 at 1.[1] Near Victim 1, law enforcement located approximately eighteen cartridge cases: ten identified as being fired from a Beretta APX model 9mm Luger semi-automatic pistol with laser light, bearing serial number AOO7178X ("Beretta"), and eight identified as being fired from a Kel-Tec Sub-2000 model 9mm Luger rifle with foregrip light, serial number FGMH22

---

[1] For purposes of ruling on the notices and motions only, the Court accepts the Government's recitations of the facts.

("Kel-Tec"). *Id*. at 1-2. Additionally, a cartridge case, likely fired by a Glock [Gen 1-4] pistol ("Glock"), was located several yards from Victim 1's body and a Glock magazine containing 9mm bullets was found in Victim 1's right sock. *Id*. at 2. However, law enforcement was unable to locate the Glock—which Victim 1 was known to carry—or Victim 1's cell phone. *Id*.

Investigators further determined that, just prior to the murder, Victim 1 left his grandmother's residence on September 7, 2023 between 12:30 and 1:00 a.m. with Defendant in the Defendant's Jeep. *Id*. at 2. Surveillance video from a Casey's gas station located at 702 S. 32nd, Muskogee, Oklahoma showed Defendant's Jeep at the Casey's between 1:48 and 2:03 a.m. Dkt. No. 26 at 2. During that time, Victim 1 exited the backseat of Defendant's Jeep and entered the Casey's on two (2) occasions. *Id*. Defendant exited the driver's seat and pumped gas in the vehicle. *Id*. A witness stated that a third individual was in the front passenger seat of the vehicle. *Id*. This third individual was later identified by law enforcement as Tereance Renfro ("Renfro"), a known associate of Defendant. Dkt. No. 26 at 2.

## II.    Procedural History

A criminal complaint was filed April 17, 2024. Dkt. No. 1. Defendant was arrested on April 18, 2024. Dkt. No. 5. He made his initial appearance before Magistrate Judge Jason A. Robertson on April 22, 2024. Dkt. No. 8. Defendant's retained counsel entered his appearance that day. Dkt. No. 7. An indictment was filed May 15, 2024. Dkt. No. 13. A scheduling order was entered May 21, 2024. Dkt. No. 23. Under the scheduling order pretrial motions and objections to notices were due June 4, 2024. *Id.* The trial was set for June 24, 2024. *Id.* On May 28, the Government filed a notice of intent to introduce expert witness testimony, in which it provided notice that it would call a representative of the FBI's Computer Analysis and Response Team ("CART") to testify regarding phone records in the case. Dkt. No. 24 at 18. Defendant did

not file any pretrial motions, nor did he object to the Government's notice.  On June 5, 2024, Defendant moved for a continuance [Dkt. No. 27] and the trial was reset for October 28, 2024 [Dkt. No. 28].  Under the second scheduling order, pretrial motions and objections to notices were due September 16, 2024.  *Id.*  A superseding indictment was filed June 12, 2024.  Dkt. No. 32.

On September 6, 2024, the Government filed a supplemental notice of intent to introduce expert witness testimony in which it identified Special Agent Joseph Keyes as a certified member of the FBI's Cellular Analysis Survey Team ("CAST") program and explained that his testimony would include "location-based analysis of the cellular devices in the case and their approximate locations at particular times." Dkt No. 37 at 24.  The notice detailed Special Agent Keyes' methods of analysis to include the use of Cell Site Location Information ("CLSI"), call detail records, and timing advance data (or timing advance records).  *Id.* at 24-25.  According to the notice, Special Agent Keyes' report was provided to Defendant's counsel on August 26, 2024.  *Id.* at 27.  Defendant did not file pretrial motions or objections to the Government's notice in advance of the September 16, 2024 deadline.

On September 26, 2024, Defendant moved to continue the trial a second time.  Dkt. No. 40.  The motion was granted, and under the third scheduling order, the trial was set for February 3, 2025 and the pretrial motions and notice objections deadline was set for December 23, 2024.  Dkt. No. 41.  On December 12, 2024, Defendant moved to continue the trial a third time.  Dkt. No. 46.  Under the fourth scheduling order, the trial was set for March 31, 2025 and the pretrial motions and notice objections deadline was set for February 17, 2025.  Dkt. No. 51.  Defendant did not file any pretrial motions or notice objections in advance of the February 17, 2025 deadline.  On February 25, 2025, the parties jointly moved to continue the trial.  Dkt. No. 53.  The motion was granted and under the fifth scheduling order, the trial was set for June 2, 2025 and the pretrial

motions and notice objections deadline was set for April 21, 2025.  Dkt. No.54.  Defendant did not file any pretrial motions or notice objections in advance of the April 21, 2025 deadline.

Due to the Court's schedule, the June 2, 2025 trial was reset for May 19, 2025.  Dkt. No. 61; Dkt. No. 63.  On May 7, 2025, Defendant moved to continue the trial a fifth time.  Dkt. No. 64.  The motion was granted and under the sixth scheduling order, the trial was set for September 2, 2025 and the pretrial motions and notice objections deadline was set for July 21, 2025.  Dkt. No. 65.  A second superseding indictment was filed May 14, 2025.  Dkt. No. 67.  Defendant did not file any pretrial motions or notice objections in advance of the July 21, 2025 deadline.  But on the deadline, Defendant moved for an extension of the deadline through July 28, 2025.  Dkt. No. 80.  The Court granted the motion.  Dkt. No. 81.  Defendant did not file any pretrial motions or notice objections in advance of the extended deadline.

A pretrial conference was held August 14, 2025.  Dkt. No. 89.  Due to a scheduling conflict on the part of the Government's counsel, the trial was continued to October 6, 2025.  *Id.*  Under the seventh scheduling order, the pretrial motions and notice objections deadline was closed.  Dkt. No. 90.  On September 26, 2025, Defendant moved to continue the trial a seventh time and requested that the pretrial motions deadline be reopened.  Dkt. No. 98.  The Court granted the motion as to the continuance but denied it as to reopening the motions deadline.  Dkt. No. 102. On September 26, 2025, Defendant also filed a trial brief in which he challenged the admissibility of Special Agent Keyes' testimony regarding location-based analysis of the cellular phones in the case under Federal Rule of Evidence 702 and  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Dkt. No. 101.

## DISCUSSION

As a preliminary matter, the Government argues that Defendant's trial brief constitutes an untimely *Daubert* motion.  Dkt. No. 104 at 2-3.  The Court agrees.  Given that the Government

provided Special Agent Keyes' to Defendant on August 26, 2024, and Defendant failed to object or file a *Daubert* motion in the fourteen months since, despite the motions and notice objections deadline being extended five times, the Court would be well within its discretion to strike Defendant's trial brief and deny *Daubert* challenge. *See Macsenti v. Becker*, 237 F.3d 1223, 1233 (10th Cir. 2001) (recognizing that a "party may waive the right to object to evidence on Kumho/Daubert grounds by failing to make its objection in a timely manner."). Nonetheless, in the interest of justice, the Court will address the issue on its merits.

## I. Defendant's *Daubert* Challenge

Admissibility of expert witness testimony is evaluated under Federal Rule of Evidence 702, which permits a qualified expert witness to testify and render an opinion if the proponent demonstrates to the Court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. "When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence." *Bright v. Ohio Nat'l Life Assur. Corp.*, 11-CV-475, 2013 WL 12327512, at *1 (N.D. Okla. Jan. 9, 2013) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)). "First, the Court determines whether the expert is qualified by knowledge, skill, experience, training or education to render the opinion." *Lippe v. Howard*, 287 F. Supp. 3d 1271, 1277-78 (W.D. Okla. 2018). "If so qualified, the Court must then determine whether the expert's opinion is reliable and relevant under the principles set forth in *Daubert* and

*Kumho Tire*, in that it will assist the trier of fact." *Id*. at 1278. The party offering the expert testimony has the burden to prove that the expert is qualified and that his opinions are based in sound methodology and sufficient facts. *Dodge v. Cotter Corp*., 328 F.3d 1212, 1222 (10th Cir. 2003).

Here, Defendant does not challenge Special Agent Keyes' qualifications, or the relevance of the anticipated testimony. The sole basis for Defendant's *Daubert* challenge is the reliability of Special Agent Keyes' method of analysis, therefore, the Court will limit its discussion to that issue.

Regarding reliability, the Court must focus on "principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. The Tenth Circuit has cited four factors that district courts should apply to make a reliability determination:

> (1) Whether a theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known potential rates of error with regard to specific techniques; and (4) whether the theory or approach has "general acceptance."

*Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005) (quoting *Daubert*, 509 U.S. at 593-94). *Daubert* recognizes that these factors are not a "definitive checklist." *Daubert,* 509 U.S. at 593; *Kumho Tire*, 526 U.S. at 150-51. A trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire*, 526 U.S. at 152. An expert witness may rely on his or her experience in that field if the witness "explain[s] how that experience leads to the conclusion reached, why that experience is a sufficient basis of the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702 advisory committee's note (2000 amendment)).

With regard to the reliability factors, Defendant argues that: (1) "CLSI analysis methods, such as mapping or drive tests, lack independent testing and peer review outside law enforcement

circles. Studies indicate error rates up to 40% in traditional analysis. Without rigorous scientific validation, the technique cannot be reliably tested;" (2) "There is no established error rate for CSLI data or its interpretation. Factors like signal variability make error unpredictable;" (3) "No uniform standards govern CSLI collection or analysis; data is for billing, not for forensic location;" and (4) "While accepted in some courts, critics label CLSI 'junk science' due to its limitations." Dkt. No. 101 at 4. Defendant doesn't cite any authority and has provided no factual or legal basis for these assertions. And while Defendant acknowledges that there are different types of CLSI analysis, with varying degrees of reliability, he does not address why those distinctions are important as they apply to the evidence being offered in this case.

Two types of CLSI analysis are relevant here. The first is a method that relies on the "granulization theory," in which analysts: (1) estimate the range of a cell site based on the cell tower's proximity to other cell towers; (2) predict the towers' coverage overlap based on the estimated range of each cell site; (3) estimate the location of a cell phone connecting to certain cell towers, assuming that the phone connected to the closest tower. *See United States v. Evans*, 892 F. Supp. 2d 949 (N.D. Ill. 2012)). Courts have deemed this method unreliable because: (1) evidence demonstrates that cell phones do not always connect to the closest cell tower; and (2) the granulization theory "remains wholly untrusted by the scientific community," not having been scientifically tested or peer reviewed. *Id.* at 956-57. Defendant cites *Evans* for the proposition that analyses relying upon the granulization theory are unreliable. Dkt. No. 101 at 4. However, *Evans*, and other cases involving the granulization theory, are inapposite here, because the granulization theory was not relied upon in analyzing the CSLI in this case. Dkt. No. 104 at 4-7.

The second relevant method of analyzing CSLI, involves the use of call detail records ("CDRs") and Timing Advance Data (or Timing Advance Records) ("TARs") to determine the

approximate location of a cell phones at given time ("TAR analysis"). Dkt. No. *Id.*; Dkt. No. 37 at 25-28. The CDR and TAR data used in the TAR analysis originates from cellular service providers. *United States v. Clanton*, No. 23-CR-328 (KAM), 2024 WL 1072050, at *28 (E.D.N.Y. Mar. 12, 2024). Using this data, the provider can determine the precise distance between a cell phone and a cell tower at certain connection point "based on the time it took for the cell phone's signal to travel to the tower and back." *Id.*

TAR analysis has been deemed reliable by courts because: (1) TARs are widely used by cell service providers to "optimize and trouble shoot and fix their networks," thus, providers have a compelling business interest to ensure TAR data is accurate so they can "provide quality service to their customers;" (2) TARs are also used by law enforcement agencies across the country to track the general locations of phones including to support efforts to locate fugitives, missing children, and victims of kidnapping, as well as to exonerate suspects;" (3) TAR analysis has been the subject of expert testimony by law enforcement officers, authoritative articles and peer review publications, and "numerous judicial opinions across the United States." *Id.* at 29. TAR analysis was the method employed by Special Agent Keyes in this case. Dkt. No. 37 at 25-28; Dkt. No. 104 at 5-8; Dkt. No. 104-2; 104-3. Notably, Defendant does not challenge this method's reliability. *See* Dkt. No. 101.

The Court agrees with courts having previously considered the issue that TAR data meets the criteria for reliability under the *Daubert* standard and is admissible. *Att'y Gen. of Okla. v. Tyson Foods Inc.*, 565 F.3d 769, 780 (10th Cir. 2009) (recognizing that whether another court has accepted a methodology is relevant in determining whether expert testimony is reliable). The Court, therefore, will not exclude Special Agent Keyes' testimony. Defendant may, of course, cross-examine Special Agent Keyes as to his methods.

The Court will also deny Defendant's request for a hearing on his *Daubert* Motion.  Dkt. No. 101 at 5.  "Daubert does not mandate an evidentiary hearing."  *United States v. Mathews*, 928 F.3d 968, 979 (10th Cir. 2019) (quoting *United States v. Nichols*, 169 F.3d 1255, 1262 (10th Cir. 2019)); *see also Kumho Tire,* 526 U.S. at 152 ("The trial court must have the ... latitude ... to decide whether or when special briefing or other proceedings are needed to investigate reliability").  Considering the parties' briefing, in addition to the *Daubert* analysis above, the Court finds that a hearing is not necessary.

## II.     Admissibility Under Rule 403

Federal Rule of Evidence 403 allows the Court, in its discretion, to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  Fed. R. Evid. 403.  Here, Defendant claims that, even if CSLI analysis is "marginally reliable," its "probative value is low compared to its prejudicial impact" because a jury may "overvalue it a 'scientific proof,' akin to the CSI effect, despite inaccuracies."  Dkt. No. 101 t 4.  The Court disagrees.  First, the Court has found that the testimony at issue in this case meets the *Daubert* standard for reliability.  This finding that cuts against Defendant's implication that the testimony is only "marginally reliable."   Second, Special Agent Keyes' report and supporting documentation are probative, showing the location of the various cell phones analyzed in the case before, during, and after the murder is alleged to have occurred.  Dkt. No. 104-2; Dkt. No. 104-3.  Finally, while defendant suggests that Special Agent Keyes' analysis is not "scientific" and contains "inaccuracies," he has not offered any factual support for these suggestions.  *Id.*  Thus, the Court finds that Defendant has failed to show a risk of prejudice that outweighs the probative value of Special Agent Keyes' testimony.

For these reasons, Defendant's request for exclusion of Special Agent Keyes' testimony [Dkt. No. 101] is DENIED.

Dated this 14th day of October 2025.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE